IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**LAKEISHA RANDLE**                                                                                       **PLAINTIFF**

V.                          **CASE NO. 4:21-CV-00256-KGB-ERE**

**COMMISSIONER of**
**SOCIAL SECURITY ADMINISTRATION**                                     **DEFENDANT**

## RECOMMENDED DISPOSITION

This Recommended Disposition ("Recommendation") has been sent to United States District Judge Kristine G. Baker. Either party may file written objections to this Recommendation. Objections should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within 14 days of this Recommendation. If no objections are filed, Judge Baker can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

**I.     INTRODUCTION**

On January 5, 2018, Lakeisha Randle applied for disability benefits, alleging disability beginning September 28, 2017. (Tr. at 15). Her claims were denied both initially and upon reconsideration. *Id*. After conducting a hearing on April 29, 2019, an Administrative Law Judge ("ALJ") denied Ms. Randle's application on June 7,

1

2019. (Tr. at 31). Following the ALJ's order, Ms. Randle sought review from the Appeals Council, which denied her request for review. (Tr. at 1). Ms. Randle seeks judicial review of the ALJ's decision, which now stands as the Commissioner's final decision.

For the reasons stated below, the Court should affirm the decision of the Commissioner.

**II.    THE COMMISSIONER'S DECISION**

The ALJ found that Ms. Randle had not engaged in substantial gainful activity since the alleged onset date of September 28, 2017. (Tr. at 18). At Step Two, the ALJ found that Ms. Randle had the following severe impairments: residuals from a left Schatzker VI tibial plateau fracture with associated posterior knee dislocation status post multiple surgical procedures and anxiety. *Id*.

After finding Ms. Randle's impairments did not meet or equal a listed impairment (Tr. at 18), the ALJ determined that she had the residual functional capacity ("RFC") to perform work at the sedentary exertional level, except that she could: (1) sit six to eight hours during an eight-hour workday, one to two hours without interruption; (2) stand one to two hours during an eight-hour workday, no more than 15 to 30 minutes at a time; (3) occasionally climb, stoop, crouch, kneel, and crawl; (4) perform unskilled/rote activity in that she would understand, follow, and remember concrete instructions; and (5) have superficial contact with

supervisors, co-workers, and the public meaning that she could meet, greet, make change, and give simple instructions and directions. (Tr. at 20).

Relying on the testimony of a Vocational Expert ("VE"), the ALJ found that Ms. Randle was unable to perform her past relevant work as a machine operator, but that Ms. Randle's RFC would allow her to perform jobs that exist in significant numbers in the national economy, including machine tender and inspector. (Tr. at 29-30). The ALJ concluded that Ms. Randle was not disabled. (Tr. at 31).

### III. DISCUSSION

#### A. Standard of Review

In this appeal, the Court must review the Commissioner's decision for legal error and determine whether the decision is supported by substantial evidence on the record as a whole. *Brown v. Colvin*, 825 F.3d 936, 939 (8th Cir. 2016) (citing *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010)). "Substantial evidence" in this context means "enough that a reasonable mind would find [the evidence] adequate to support the ALJ's decision." *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009) (citation omitted). In making this determination, the Court must consider not only evidence that supports the Commissioner's decision, but also evidence that supports a contrary outcome. *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015). The Court will not reverse the Commissioner's decision, however, "merely because

substantial evidence exists for the opposite decision." *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (citation omitted).

    **B.**    **Ms. Randle's Arguments on Appeal**

Ms. Randle, appearing *pro se*, argues that the ALJ's decision is not supported by substantial evidence. She argues that the ALJ erred in evaluating her subjective complaints and that her RFC does not capture the concrete consequences of her functional limitations. After reviewing the record as a whole, the Court concludes that the ALJ did not err in denying benefits.

A claimant bears the burden of proving her RFC, which represents the most she can do despite the combined effects of her credible limitations. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). "It is the ALJ's responsibility to determine a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of [her] limitations." *Id*. Part of the RFC determination requires assessing a claimant's credibility regarding her subjective complaints. A claimant's credibility is primarily for the ALJ, not the courts, to decide. *Id*. at 1218.

In this case, the ALJ properly evaluated Ms. Randle's subjective complaints by considering her work history, the objective medical evidence, and other relevant evidence, including: (1) her daily activities; (2) the duration, frequency, and intensity of her pain and other symptoms; (3) precipitating and aggravating factors; (4) the

dosage, effectiveness, and side effects of medication; and (5) her functional restrictions. See *Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019); see also 20 C.F.R. §§ 404.1529(c), 416.929(c). After reviewing the evidence, the ALJ determined Ms. Randle's complaints were not entirely credible.

Ms. Randle's course of treatment and medications support the ALJ's finding. In September 2017, she was injured in a scooter accident, resulting in tibial fractures with dislocation of her left knee. (Tr. at 605). Following surgery, she was non-weight bearing to her left lower extremity and was in a knee brace. (Tr. at 321). Two months later, after a round of physical therapy, the pain and swelling in her leg was much improved and she was "[t]aking minimal pain medicine, really only to sleep." (Tr. at 634). Range of motion in her knee, however, was limited. *Id*. In January 2018, she was weightbearing as tolerated and did not use assistive devices when ambulating. (Tr. at 631). She was not taking any prescription or over-the-counter pain medicine. *Id*. To improve her knee range of motion, she underwent a knee manipulation under anesthesia and left knee steroid injection. (Tr. at 315). She continued physical therapy, and by March 2018 her range of motion had improved, though she did report some pain with weightbearing, especially after therapy sessions. (Tr. at 452-53). In April 2018, she underwent a left knee arthroscopy with lysis of adhesions to address residual pain and stiffness in her knee. (Tr. at 589). Two days later, Ms. Randle was involved in a motor vehicle accident that slowed her progress, but knee imaging

found no acute issues and she was discharged with prescriptions for Tylenol #3 and Bactrim. (Tr. at 412-15). In follow-up visits, her orthopedist advised that she may eventually need a total knee arthroplasty, but he found that conservative treatment of pain medication and steroid injections was still appropriate. (Tr. at 615). Despite Ms. Randle's testimony that she required a cane to ambulate, there is no medical record or opinion documenting the use of an assistive device as being medically necessary. See *Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005). In sum, Ms. Randle's progress supports the ALJ's determination that her symptoms were adequately controlled such that she could perform a limited range of sedentary work. See *Moore v. Astrue*, 572 F.3d 520, 525 (8th Cir. 2009) (finding conservative treatment history inconsistent with allegations of disabling pain).

Ms. Randle's reported daily activities also support the ALJ's decision. Although Ms. Randle reported that her leg was always in pain and she could not stand or sit, she also reported that she could care for her 14-year-old son, prepare quick meals, clean her house, do her own laundry, drive, pay bills, attend church regularly, and shop in stores and by phone for clothes, food, and household products. (Tr. at 26, 216-18). The ALJ found that Ms. Randle's daily activities weighed against her subjective claims, and emphasized that Ms. Randle appeared to "function at a largely normal level on a daily basis with the single exception that she does not engage in gainful work activity." (Tr. at 26). Indeed, the Eighth Circuit has held that

such activities are inconsistent with subjective complaints of disabling symptoms. See *Medhaug v. Astrue*, 578 F.3d 805, 817 (8th Cir. 2009).

Although on appeal Ms. Randle complains of medication side effects—including dizziness, drowsiness, and fatigue—no similar significant complaints were documented in the medical records or discussed at the ALJ hearing. Ms. Randle did report drowsiness from her hydrocodone in her Function Report. (Tr. at 222). However, as the ALJ noted in his written decision, the narcotic was only prescribed to be taken "as needed," which presumes that her doctors believed she would not need to take it at all times. (Tr. at 27). Nevertheless, the ALJ acknowledged that Ms. Randle likely suffered from some level of pain and fatigue, which he addressed by limiting her to sedentary work with additional postural limitations. (Tr. at 29).

The ALJ was entitled, in assessing Ms. Randle's credibility, to find that this cumulative evidence outweighed her fair work history. See *Bryant v. Colvin*, 861 F.3d 779, 782 (8th Cir. 2017) (ALJ may properly discount claimant's credibility despite good work history). Because the ALJ supported his evaluation with good reasons and substantial evidence, the Court will defer to his determination that Ms. Randle's claimed limitations are "not entirely credible." *Nash v. Comm'r*, 907 F.3d 1086, 1090 (8th Cir. 2018).

The record demonstrates that the ALJ carefully considered all of the relevant evidence in determining Ms. Randle's RFC. The ALJ's RFC conclusions are

consistent with the treatment record and even more favorable to Ms. Randle than those recommended by consulting state-agency physicians. The ALJ included durational limits on standing and sitting to account for her reduced exertional capacity. Despite her minimal history of conservative mental health treatment, the ALJ gave Ms. Randle "the benefit of the doubt" regarding her anxiety by limiting her to unskilled work with only superficial contact with others. (Tr. at 28). Ms. Randle's remaining complaints are unsupported by the record, and thus the ALJ was not required to adopt any RFC limitations to account for them. *Perkins v. Astrue*, 648 F.3d 892, 902 (8th Cir. 2011).

The ALJ captured all of Ms. Randle's credible limitations in the hypothetical he posed to the VE and properly relied on the VE's testimony that Ms. Randle could adjust to other work in the national economy. See *Page v. Astrue*, 484 F.3d 1040, 1045 (8th Cir. 2007) (VE testimony based on properly phrased hypothetical constitutes substantial evidence supporting decision to deny benefits). Substantial evidence therefore supports the conclusion that Ms. Randle was not disabled.

## IV.   CONCLUSION

The ALJ applied proper legal standards in evaluating Ms. Randle's claims, and substantial evidence supports the decision to deny benefits. The Court should affirm the decision and enter judgment in favor of Defendant.

IT IS SO ORDERED this 9th day of March, 2022.

_____
UNITED STATES MAGISTRATE JUDGE